

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re:<br>OUTBOARD MARINE CORP., et al.<br><br>Debtors | FILED<br>MAR 9 - 2005<br>JUDGE HARRY D. LEINENWEBER<br>U.S. DISTRICT COURT JUDGE |
| FEDERAL-MOGUL CORP.,<br><br>Defendant and<br>Counter-Plaintiff/<br>Appellant,<br><br>v.<br><br>BANK OF AMERICA,<br><br>Plaintiff and<br>Counter-Defendant/<br>Appellee. | Case No. 04 C 1404<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This is Federal-Mogul Corp.'s (hereinafter, "Federal-Mogul") appeal of the Bankruptcy Court's January 29, 2004 Order (the "Appeal"). For the following reasons, the Appeal is **DENIED**.

### I. BACKGROUND

In January 1998, Outboard Marine Corp. (hereinafter, "OMC") contracted with Federal-Mogul for Federal-Mogul to make various dies, molds, forms, jigs, and patterns (collectively, the "Tooling") and to manufacture products using the Tooling (the "OMC Products"). *See In Re Outboard Marine Corp.*, 304 B.R. 844, 855 (N.D. Ill. 2004)("*Outboard Marine*"). Federal-Mogul subcontracted

some of the work, but remained in actual possession and control over the Tooling.

On December 22, 2000, OMC filed a voluntary bankruptcy petition. On February 9, 2001, the Bankruptcy Court authorized the sale of substantially all the assets associated with OMC's business. OMC sold certain property, including the Tooling, free and clear of all liens, claims, and interests. In April 2001, Federal-Mogul filed a claim for over $2 million, including claims allegedly secured by the Tooling.

## A. Indiana Fabricator's Lien Statute

The parties agree that the Indiana Fabricator's Lien Statute (hereinafter, the "Statute") governs. Section Three of the Statute addresses the issue of possession -- "a fabricator has a lien, dependent on possession, on any die, mold, form, jib or pattern [hereinafter "equipment"] in the fabricator's possession belonging to the customer for the amount due from the customer" for fabrication work on the equipment. Ind. Code § 32-33-16-3 (2002). Section Four, entitled "Notice to Enforce Lien," requires the lienholder to provide notice to the customer:

> (a) Before enforcing a lien under this chapter, *notice in writing* must be given to the customer, whether delivered personally or sent by certified mail to the last known address of the customer.
>
> (b) The notice under subsection (a) must:

>    (1) state that a lien is claimed for the damages set forth or attached for the amount due . . . ; and
>
>    (2) include a demand for payment.

§ 32-33-16-4. Further, Section Five allows a lienholder to sell the equipment if not paid within sixty days after providing the required notice outlined above, see § 32-33-16-5, and Section Six provides a second notice requirement for the sale of the equipment to the customer <u>and</u> to any person whose security interest is perfected. See § 32-33-16-6.

### B. Bankruptcy Court Order

Bank of America (hereinafter, the "Bank") filed a complaint and an amended complaint seeking a determination of the extent, validity, and priority of the purported liens. Federal-Mogul filed an answer and asserted several affirmative defenses. In October 2003, Federal-Mogul filed a partial summary judgment motion contending that, prior to the sale of assets, it held possessory liens in OMC's Tooling that were senior in priority to the Bank's security interest. The Bank responded that Federal-Mogul did not have an enforceable, perfected lien because it failed to comply with the applicable statutory notice requirements. Federal-Mogul conceded that it did not provide OMC with written notice asserting a lien on the Tooling. However, Federal-Mogul argued that the Statute's notice requirement was not triggered because it did not

try to sell the Tooling as of the bankruptcy petition date, and that its lien was governed solely by Section Three of the Statute.

In considering the partial summary judgment motion, the Bankruptcy Court recognized that the central issue was the proper interpretation of the Statute. The court first outlined the relevant provisions of the Statute, concluding:

> Read as a contextual whole, the Indiana legislature's intentions in drafting the statute emerge. Specifically, it appears that three separate and distinct subjects are addressed: (1) perfection of the fabricator's lien though possession (§ 32-33-16-3); (2) advising the customer that the lien is being asserted (§ 32-33-16-4); and (3) sale of the mold or die of the customer who will not pay the fabricator what is owed (§§ 32-33-16-5 and -6). *See W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.*, No. CIV.A.95-3565, 1997 WL 476288 (E.D. Pa. Aug. 19, 1997)["*Adcock 2*"]. If the Court were to apply Federal-Moguls' suggested construction of the statute, "enforce" and "sale" would be combined into one concept, making Section 4 -- the enforcement provision of the statute -- redundant, superfluous, and extraneous.

*Outboard Marine*, 304 B.R. at 863.

The Bankruptcy Court also noted that there were no published cases construing the Statute, but considered the two unpublished cases that interpreted the Statute, *W.W. Adcock, Inc. v. Fort Wayne Pools, Inc.*, No. CIV.A. 95-3565, 1997 WL 381769 (E.D. Pa. June 27, 1997)("*Adcock 1*" and "*Adcock 2*")(collectively referred to as "*Adcock*"). In *Adcock 1*, the court concluded that the Statute's plain language required a lienholder to notify the customer in

writing of its intent to enforce the lien and demand payment for damages before it could assert and enforce a lien. See 1997 WL 381769. Because Fort Wayne failed to take the statutorily-required steps, the court held that it was not entitled to enforce its lien. See id. In Adcock 2, the court further examined the Statute and determined that it served separate purposes:

> The lien, perfected through possession, protects the fabricator against other parties with an interest in the mold and remains in the background of the bailment of the mold. . . . If, at some time, the relationship . . . changes . . . [and] a customer does not pay the fabricator for work completed . . . then the fabricator will desire to enforce its lien against the customer. To do so, the fabricator must comply with [the Statute], which Fort Wayne did not do.

1997 WL 476288 at *2. The Bankruptcy Court "wholly agree[d] with the Adcock court and adopt[ed] both that reasoning and conclusion." Outboard Marine, 304 B.R. at 864.

The Bankruptcy Court also considered the cases cited by Federal-Mogul. The first case was not supportive because it dealt with an act that differed significantly from the Statute and had a single notice requirement. The second, Plasti-World Products, Ltd. v. Burgundy Products Manufacturing, Inc., 1999 WL 1270714 (N.D. Ill. Dec. 27, 1999)("Plasti-World"), interpreted the Illinois Tool and Die Lien Act, which also has a double notice requirement. Plasti-World disagreed with a prior case interpreting the same statute, and contrarily held that "[p]ossession is a prerequisite

- 5 -

to enforcement of the lien, not its attachment." *Id.* at *7. Thus, it held that notice must be given before sale, but not for a perfected lien. *See id.* The Bankruptcy Court was not persuaded by *Plasti-World* because it applied a different statute and directly contradicted another case that interpreted the same statute.

The Bankruptcy Court concluded that based upon the statutory scheme, structure, and three-pronged legislative intent, "a fabricator must assert its lien by complying with the statutory notice provision set forth in § 32-33-16-4 in order to lay claim to benefits under the statute." *Outboard Marine,* 304 B.R. at 866. Because Federal-Mogul failed to provide written notice to OMC, Federal-Mogul was not entitled to enforce its lien against the Tooling or sale proceeds. Accordingly, the court denied Federal-Mogul's partial summary judgment motion and dismissed its third affirmative defense.

The court also granted the Bank's motion to strike portions of Richard Harvey's affidavit as unsupported by personal knowledge. *See id.* at 857-88. In so holding, the court noted that such statements "do not bear on the material issues in the matter at bar, which concern only the validity and priority of Federal-Mogul's purported lien, not the extent of that lien. Federal-Mogul itself concedes that [they are] immaterial to the instant motion" and "not outcome determinative." *Id.* at 858.

## II. DISCUSSION

### A. Legal Standard

District courts apply a dual standard of review when considering a bankruptcy appeal. The factual findings of the Bankruptcy Court are reviewed for clear error, while the conclusions of law are reviewed *de novo*. *See In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998). A grant or denial of summary judgment will be upheld "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Ind. Ass'n of Homes for the Aging, Inc. v. Ind. Office of Medicaid Policy & Planning*, 60 F.3d 262, 266 (7th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

### B. Appeal

Federal-Mogul presents the following question in its Notice of Appeal: "Whether the bankruptcy court erred in determining that Federal-Mogul cannot assert its lien because, according to the court, it did not comply with the notice requirement set forth in the [Statute]." (Notice of Appeal at 5). Federal-Mogul urges the Court to reverse the Bankruptcy Court's Order and hold that it has a valid and enforceable first priority lien in the proceeds of the asset sale of the Tooling. (Br. at 26).

The Court reviews *de novo* the enforceability of Federal-Mogul's lien. Federal-Mogul contends that it:

> has a valid first priority statutory fabricator's lien on the sale of proceeds of tooling in its physical and constructive possession, and that its lien is superior to any lien of [the Bank] . . . [it] was not required to give notice to the Debtor, [OMC], that it intended to enforce its lien . . . against the proceeds of the asset sale conducted through the bankruptcy court.

(Br. at 3). Federal-Mogul acknowledges that the Statute governs, and that OMC owed it money before OMC filed its bankruptcy petition. (Rep. Br. at 4). Federal-Mogul admits that it did not provide written notice to OMC of its intent to enforce its lien on the Tooling as Section Four of the Statute requires. Federal-Mogul also acknowledges that the Statute provides "for two separate mandatory notices which must be given if, and when, the lienholder seeks to enforce its lien." (Resp. Br. at 4).

Federal-Mogul argues that the Bankruptcy Court erred by confusing "the concepts of perfection and enforcement to require that notice of enforcement be given to preserve a perfected lien," and by considering the Statute in a vacuum without regard to the Bankruptcy Code. *Id.* at 10. The Bank responds that the language of the Statute is clear, and because it is undisputed that Federal-Mogul failed to send the required notice, the Bankruptcy Court Order is correct and should be affirmed.

The Court first looks to the Statute's language, and gives effect to its plain meaning. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 508 (7th Cir. 1998). "When a word

is not defined in a statute, [a court] normally construe[s] it in accord with its ordinary or natural meaning." *Newsom v. Friedman*, 76 F.3d 813, 816 (7th Cir. 1996)(citation omitted). A statute must also be construed so as to avoid rendering provisions or words meaningless, redundant, or superfluous. *See Matter of Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996). The Court must examine the Statute in its entirety to determine, and give effect to, the legislative intent. *See U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997).

Here, the Statute contemplates three separate issues: (1) the existence of lien dependent on possession (Section Three), (2) required notice of intent to execute the lien (Section Four), and (3) sale of the equipment secured by the lien (Sections Five and Six). In other words, a fabricator can have a lien on a customer's equipment in its possession for amounts due for services rendered, and can retain possession of the customer's equipment if not paid. However, the fabricator <u>cannot enforce</u> the lien, or state a claim for the amount due from the customer, until such fabricator expressly tells the customer in writing "that a lien is claimed for the damages set forth . . . for the amount due" and makes a written demand for payment. § 32-33-16-4. Additionally, if sixty days after providing written notice with the demand for payment to the customer the amount due is still outstanding, then the fabricator may sell the equipment after it provides notice of the sale to the

customer and any other person whose security interest is perfected in the equipment of the sale. *See* §§ 32-33-16-5, & -6.

Section Four does not limit the requirement of notice to those fabricators who only wish to "sell" equipment -- it also applies to fabricators who formally demand payment. In fact, none of the statutory language suggests that Section Four is meant to be narrowly construed to only mean "sell" as argued by Federal-Mogul. Although "enforce" is not defined in the Statute, its common meaning is broader than the interpretation argued by Federal-Mogul -- "enforce" is defined as "to give force or effect to (a law, etc.); to compel obedience to . . . to compel a person to pay damages for not complying with (a contract)." BLACK'S LAW DICTIONARY 549 (7th Ed. 1999). Although customers provide their equipment to fabricators to have services rendered, they may miss payments for reasons other than intentional nonpayment -- such as inadvertence, invoice discrepancy, or miscommunication. The Statute plainly provides that the customer is entitled to notice before the fabricator seeks to enforce its lien.

Thus, having a lien, dependent on possession, does not relieve a fabricator of the obligation to provide written notice and demand payment under Section Four regardless of whether the fabricator wishes to sell or retain the equipment. The requirements for sale under Sections Five and Six are separate and distinct from Section

Four. Federal-Mogul's interpretation thus impermissibly renders Section Four extraneous or redundant.

Based upon our detailed review of the Statute, the Court concludes that a fabricator must provide written notice to enforce its lien against the equipment or proceeds of its sale. The Court's statutory interpretation does not render provisions redundant, extraneous, or superfluous, and is consistent with the Statute's plain language, structure, and the common meaning of "enforce." Further, the Court's interpretation is in line with *Adcock*, which the Court finds most persuasive because it actually construed the Statute in question, rather than a different statute. It is undisputed that Federal-Mogul did not provide written notice to OMC, and therefore it did not have a lien that was perfected and enforceable under the Statute. Thus, the Court agrees with the Bankruptcy Court and concludes that Federal-Mogul's lien on the Tooling and asset sale is not enforceable.

Federal-Mogul also raises, for the first time, many defenses for its lack of notice to OMC. The Bank contends that these are impermissible because the issues were not raised before the Bankruptcy Court. Federal-Mogul responds that these are new arguments, not new issues, and that they are in support of its single issue of whether its "lien in the proceeds of an asset sale under § 363(f) of the Bankruptcy Code is extinguished because Federal-Mogul is not seek to enforce that lien prior to the

Debtors' filing for bankruptcy." (Reply Br. at 17). The Court disagrees that this is the issue presented in the Appeal. In the Bankruptcy Court, Federal-Mogul argued that it had a senior, perfected lien in the Tooling, and was entitled to proceeds from the asset sale. In its Notice of Appeal, Federal-Mogul argued that the Bankruptcy Court erred by concluding that it could not enforce its lien due to its non-compliance with the Statute's notice requirements. The Court nonetheless addresses Federal-Mogul's arguments as they further support the Court's conclusion.

First, Federal-Mogul asserts that it could not provide notice because it was prevented by the automatic stay provision of the Bankruptcy Code. In support, Federal-Mogul points primarily to *In Re Vienna Park*, 136 B.R. 43 (S.D.N.Y. 1992), and *In Re Park at Dash Point L.P.*, 121 B.R. 850 (W.D. Wash. 1990). These two cases, however, are distinguishable because they deal with the treatment of rents. Further, *In Fe Vienna Park Properties* held that creditor was entitled to enforce its lien in rents only from the date the motion was filed and forward. The court stated: "To grant the Secured Creditors rights to the rents from the date of default . . . before they had taken *any* steps to enforce their interest in the rents, would be to extend them greater rights under the Bankruptcy Code then they would have had under [state] law." *Vienna Park*, 136 B.R. at 55 (emphasis in original). Here, unlike *Vienna Park*, there is no ongoing stream of payments and no rents.

Further, under Section 545 of the Bankruptcy Code, the "trustee may avoid the fixing of a statutory lien . . . to the extent that such lien . . . is not perfected or enforceable at the time of the commencement of the case . . . " 11 U.S.C. § 545. Because Federal-Mogul did not provide the required notice, it was not enforceable at the commencement of the bankruptcy and could be avoided by the trustee.

Federal-Mogul alternatively contends that it need not comply with the Statute's notice requirements because it seeks to enforce the lien against proceeds of the sale and the Bank's interest, not OMC's interest. Federal-Mogul argues that the Statute at best prevents it from enforcing against OMC, but not other persons with perfected liens in the Tooling. The Statute does not draw such a distinction, and neither will the Court. As previously discussed, the Statute plainly requires notice to a customer to enforce a lien. Federal-Mogul did not give written notice as required under the Statute, and thus it cannot enforce its lien against the Tooling or the subsequent asset sale.

Further, despite Federal-Mogul's contentions, § 363(f) allows the trustee to sell property free and clear of any liens if a lien is subject to a bona fide dispute. In this case, it is clear that Federal-Mogul's unenforced lien was subject to a bona fide dispute. Further, Federal-Mogul had the burden to prove the validity,

priority, and extent of its lien. *See* § 363(o). Federal-Mogul's arguments thus fail.

On a final note, Federal-Mogul also raises in its briefs the issue of statements stricken by the Bankruptcy Court. It did not raise this issue in its Notice of Appeal. Further, Federal-Mogul admits that "neither of these [stricken] paragraphs was determinative of [its] Motion. . . ." (Supp. Brief at 24). Due to the Court's resolution of the Appeal, *infra*, the Court need not reach this issue because the stricken statements are not material facts and do not impact the relief sought.

### III. CONCLUSION

For the foregoing reasons, the Appeal is **DENIED** and the Bankruptcy Court's Order is **AFFIRMED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: March 9, 2005